Consolidated with 23-30387. So we'll hear first from Mr. Drake Lewis. Your Honors, thank you for hearing us today. Your Honors, appellants are here today to ask this court to rule that remand is not the proper remedy when an agency fails to establish its jurisdiction upon judicial review of a final CWA agency action. This is especially true where the court's factual record precludes the establishment of its jurisdiction under the law. Now we believe that SACIT resolves all of the issues in this case going forward, including particularly the 2023 rulings. We believe that if remand was found not to be the proper remedy in 2020, then the rulings in the 2023 review of that remand should be reversed as moot. The SACIT, it adopts the Rupanis plurality opinion almost word for word. It does eliminate the significant nexus, but as for law, it's almost identical to the Rupanis plurality opinion. It does appear to reject the court's definition of adjacency for a narrow word. Are you talking about the 2020 opinion now? No, Your Honor. What are you talking about? The SACIT opinion in relation to the Rupanis opinion, them being virtually identical except for the fact that the 2023 SACIT opinion eliminates the significant nexus. As does the New Waters of the United States. Yes, Your Honor. And the narrowing of the definition of adjacency doesn't appear to affect us here. As this case, the court failed even under its broader definition of adjacency. As to the case itself, the new rule, the 2023 rule, the Corps and the EPA have announced that in 27 states, including Louisiana, that rule will not be applied. And so, therefore, they've indicated that the pre-2015 regulation complying with SACIT will be applied. So we're back to the same regulation that we were in 2017 and the same regulation that the court was faced with absent the significant nexus. A couple of factual questions. When the court, the district court stated in its August 2020 decision, the Corps has acknowledged that the land in question does not meet the adjacency requirement set forth under the then Scalia test. Do you recall the district court writing that? Yes, Your Honor. What's the record support for that government concession? The record support is based on the Corps' forms in their record. They indicate as to the eastern tract, and I've got a blowup of it, but it's also in your form. We've got the forms. Yeah, I've got it right in front of me. So they're supposed to check all boxes that apply. Am I right? When they check non-RPW, that's the confirmation, that's the concession, is that correct? The other one below that indicates that the wetlands are adjacent to non-RPW. Each checked box says non-RPW, which means no continuous surface connection. That's the concession the district court relied on? That means that there are no RPWs, relatively permanent waters, that these wetlands are adjacent to. Okay. Now, the following page, following that, at the bottom of the page it indicates the nearest relatively permanent water to the east tract is one to two miles. Okay. As to the west tract, it's two to five miles. Thank you. That helps me. Is there any present enforcement action pending against, is he a relative? Not relative to this property. No, you, Mr. Lewis. No enforcement action. Is there any pending enforcement action against him? No, there's no enforcement action that has begun. There was a letter sent out related to another piece of property that there were some unauthorized activities, but nothing has come of that. Is there, you've got a note. Take your time to read it, because it might illuminate the answer here. The only and last sort of record specific question, I appreciate all this information is, is there any sort of contradiction when in the 2020 JD form, the Army Corps writes that the property is jurisdictional because there's a, quote, direct hydrologic surface connection. Do you recall that? I do, Your Honor. Yes. How can that be true if before they said there wasn't? That was much of our argument is that. Is it the culvert and now culverts don't count? Well, it was the culvert, but the trick was is that culvert connected and dropped into the non-relatively permanent water. Okay. And the NWPR required, however, that the connection be to a relatively permanent water, a jurisdictional water, which was not satisfied, but the Corps just kind of glossed over that in their record. But nowhere do they contradict the fact that there are no relatively permanent waters that are adjacent to or within one to two miles of the property. I mean, district courts usually have broad discretion to voluntarily remand, and here it was an abuse of discretion to do so because it would be frivolous and the delay is as long as it's been? Is that essentially the two principal factors? That was part of the principal factor. Additionally, the remand acted as a dismissal of the case. The remand did not require the Corps to go back and reassess its jurisdictional determination. Would you have appealed had the dismissal? I agree with you. The mooting and dismissing is we'll ask the government to explain, or I'll ask to explain that. But had the order just been as in Lemony a voluntary remand, would you still be saying to us that's an abuse of discretion? And if so, were you writing our decree to language, what would you write now? We should do what? Reverse with instructions to dismiss, right? That would be my preference. Well, and Judge Jones and I often talk to each other. But if that is your preference, reverse with instructions to dismiss. Okay. Dismiss. You don't get an issuance of a non-jurisdictional determination then? Or would you want to reverse? And I'm asking him. Would you want vacate, reverse, remand to the Army Corps with instructions that it should issue a non-jurisdictional determination, that they don't have jurisdiction? I think that going back to the initial 2020 decision, that remand should not have occurred because of the fact that jurisdiction at that point could not be established. And I think from that point, if it's determined that jurisdiction cannot be met and the Corps would be enjoined from reasserting jurisdiction, then all of the actions that took place in the 2023 case are then moved. It's just a little tricky on the language. Are you asking for a declaratory judgment that this is not within the jurisdiction of the CWA? That's asking a court to state that. Whereas if what you get is a non-jurisdictional determination, that's the agency responding to what initiated all this. You asked for a determination, and you would get, I think, what you wanted, which is this is not a jurisdictional determination. Those have different legal effects. Do you understand? Do you agree? I do agree. And we did cite an example in the Hawks case when the issue was remanded back to the district court. The district court made the determination that jurisdiction did not exist, and they enjoined the court. That's an enforcement action, right? Or was that a J.D. too? I believe that was. . . That would be different, right? District courts do declare outside CWI. I do believe that that was a J.D. because there was an administrative appeal initially, and Hawks was about whether, at least when it got to the Supreme Court, it was about whether an A.J.D. was appealable. So it was the same. Go ahead. As far as the issue of the burden to establish, there was some contradiction. And SACIT does, we believe, just like Rapanos, does indicate that that burden to establish is on the core in this case. We don't believe that was a change in the law. But SACIT, just like this case, is an APA review of a final agency action, and it was not an enforcement action. We think that's substantial. In SACIT, the court remanded, reverse remanded to the Ninth Circuit. Do you know what the Ninth Circuit has done with it? The Ninth Circuit sent it back to the district court. With instructions to do what? And should we do whatever they did? Well, the one thing that SACIT did, the Supreme Court, they did not send it back to give to the agency to ask for the agency's opinion. They made a ruling. They said in that case— But do you appreciate the nuance I'm getting at? I'm thinking we protect the Army Corps'—the issue that went to the Army Corps was a jurisdictional determination one, and it may well be you're entitled to a negative jurisdictional determination. But if we were to say ourselves or tell the district court to say this is outside the CWA, that has both different consequences and it isn't the issue that was presented to the agency, I don't think. Well, that does appear to be what the Supreme Court did. As far as what the district court now will do, at least the last time I checked, they've not completed the action. But the Supreme Court did make a legal conclusion. They didn't— It's land, it's not water. Yes, this land is not water, and so the decision is made from there. They didn't wait on the Corps to reassess. They didn't give it back to the Corps because of some new rule. They made the decision. And that's really what we're after here today is to end this and finalize it. My last question in this regard is it wouldn't be giving the agency a second bite. It wouldn't be, now you can interpret this in light of SACIT. It would be saying to them, your instruction, you, Army Corps, is enter a non-jurisdictional determination, just as Mr. Lewis asked at the beginning. It would be finality, but it would be sending it to the agency to do that. That's sort of just—it's a subtlety. It is a subtlety. I don't understand that to be a requirement. I do think that when they have the burden to establish their jurisdiction and they do not meet that burden, that burden means something. If the plaintiff is required to prove a lack of jurisdiction, then that shifts the burden to us. I agree. I think if a court states it, though, it's going to be non-CWA waters forever and ever. A non-jurisdictional determination lasts five years, correct? That is correct. So the whole world of JDs or a world that maximum protection you get is five years, then maybe lots of flood, rain, conditions change, maybe it is wetlands. But if a court says it, it's taken out altogether, I think. And there's the distinction between government enforcement and private citizen enforcement, too. So they're very different consequences. Okay. He has a minute and a half, and Judge Higginson, he's been answering your questions for about 11 minutes. So maybe he ought to get a chance to conclude. I do agree with the distinction. The only example that I've found is the Hawks issue, and there they were enjoined. You're in a 500-year flood plain, right? That is correct. Are you willing to risk it that five years from now you're not going to be a wetland? Well, it depends on who you ask. If you ask the Corps, I believe that they're always going to claim that you're in a wetland and that they have jurisdiction. That's been our experience. You know, that's what happened when it was remanded under the NWPR. And regardless of whether they would ever be able to carry their burden to establish that jurisdiction, they're still going to claim it. But what we're asking for is a final rule. We're asking that this not be given back to the Corps for them to reassess. And we don't see how it would be possible for the government to come in and claim legitimately that there was any jurisdictional wetlands here. Appreciate it. Do you have anything else to say at this point? I did provide you some documents just to give you an overlay of what we're looking at. Yes. That shows in the very top you'll see two orange squares. The left square is the west tract. The right square is the eastern tract. The lines coming from each of those squares are the non-relatively permanent waters that extend from one to two and two to five miles from each of them. And then from there all the way down at the bottom of the page, 10 to 15 miles away, is the traditional navigable water that they're referring to. And I do want to stress that this is that case where we are challenging the existence of agency jurisdiction. This is that case distinguished from a Boyle's, and this is that case that every single case that the Corps has cited to insist that the general remand rule be utilized, not a single one of them was a case challenging the existence of jurisdiction. And we believe that a different standard should be applied in these type of cases. Thank you, Your Honor. Okay. Well, you do have an opportunity for rebuttal. All right. Mr. Millen? Oh, you're just doing rebuttal. Right. Yeah, I see. I misread. Thank you. Mr. Gray. May it please the Court. My name is Michael Gray. I'm here on behalf of the Army Corps of Engineers. You've been here before, right? I have been here before. I thought so. I will start maybe with some of the line of questioning you had, Judge Higginson, and address that in particular, the first question you had about the record and the initial determination where there were checks on the non-RPW. I think that that's true. I don't think that that means that the case has to be resolved in their favor at this point. Let me ask, what is the basis for the Army Corps saying that there should be a remand? Because the new waters of the U.S. rule tracks SACCET, there is no adjacent relatively permanent water. How can you possibly assert jurisdiction? And this sort of dovetails with the answer I was about to give to Judge Higginson, and we don't know for certain that there's no adjacent relatively permanent water at this point. It's been 10 years. There's been flooding all around that. When Baton Rouge and those precinct environs were totally flooded, this area was not. So I find it very difficult to believe that everything belongs to the government until the government says it doesn't. And I don't think that's our position, but our position is that facts can change on the ground. And, in fact, when they went in on the first remand, further examined the property, including this tributary B, they saw flow in it, significant flow on several occasions, and they concluded it was at least, in the record, an intermittent tributary. But that was under the significant nexus test. No, that was under the Navigable Waters Protection Rule test, which was a little bit different than the significant nexus test. And so the point we're trying to make is not that this is necessarily going to be a regulated property under the Clean Water Act, but that it's the Corps that ought to get to make that decision in the first instance, that it's the Corps that ought to look at the facts and decide whether they support a finding of a relatively permanent water, whether they support a finding of a continuous surface connection. It may be that they don't. But then a decision would say, you would agree, put it, no, I'm not suggesting any bad faith, but if it's frivolous, and I am looking at that district court finding that I read to you, and then I'm looking at the 2017 jurisdictional determination, non-RPW, and you're saying, well, it might have changed, but when I look at the fine discussion in the 2020, it was still dependent on the culvert, and then you read the red line from last week, and all the references to culverts as continuous surface are knocked out. So it seems under your 2020, even, there's no continuous surface. So that logic would say this really is frivolous. It's been 11 years. Why is the Corps pushing this, especially if the remedy might end up being, courts say, in perpetuity? We start deciding. In the context of a case that was a JD request, you've now got courts making the determination. I think we definitely don't want that. And so our submission, and that's why our submission is that it's really up to the Corps, and I don't think it's frivolous. I think it's that the Corps needs to examine the facts on the ground as they exist today. If you lose and we say it's frivolous, is there a distinction legally between us saying we instruct there will be an entry of a negative jurisdictional germination from we declare that this is not the Waters CWA? Is there a legal? Does that matter to you for administrative law in your client's position? I don't think either one of those is good or correct. I think what you would do, the way that you would do it, is to say that the record that the Corps of Engineers compiled doesn't show that this is a jurisdictional wetland under the rule, and then it's up to the Corps what happens next. It's up to Mr. Lewis whether he then wants to, I'm sorry. That's okay. Under which rule does the record not show? It didn't show under the 2020 rule. It certainly can't show under the newly promulgated rule, right? Well, I'm not saying it can't show under the newly promulgated rule. The whole point is that we think the Corps ought to get the option to do it. But if the Court disagrees. You've lost twice in district court. It sure seems like you've lost this case now in the Supreme Court. And my anxiety is remedy, that we need to get it right if you've lost. Right. If you had to say, I don't see why does the Corps need a second bite here? If it's not saying, well, you are sort of saying new expertise and change conditions. You are saying that, I guess. And that's the point. And keep in mind the nature of these approved jurisdictional determinations, which are limited in time and in scope. I mean, they only last for five years. They're not designed to say this is the status of the property forever. They only bind the Corps and EPA in the parts where they say they're not jurisdictional waters. I mean, if you come into a court with an enforcement action and you have an approved jurisdictional determination, that's not conclusive in the enforcement action. So, really, this is a very narrow thing that's provided as a public service. And, you know, Mr. Lewis. I'm sorry. Go ahead. Mr. Lewis, what if anything is happening to the Sacketts now in the Ninth Circuit? You said that. I don't know. I believe that. Well, why don't you look it up and let us know if that would enlighten some members of the panel. Well, the Supreme Court there did say not jurisdictional, right? And the government hadn't contested it there. The government hadn't contested that. If the court adopted a test that said you have to have a hydrologic surface connection, that the government couldn't meet it. And so the Supreme Court did say there that it's not jurisdictional. But the issue was not briefed at all. The court didn't explain why it didn't go through the normal administrative rules. I mean, what we're saying is just let's follow the normal rules for administrative review, review of administrative actions. We had a final agency action. What about this under the APA? The Army Corps is not entitled to do something that is against the law. Sackett declared the law. As a matter of law, there is no adjacent RPW. End of story. And I guess if the court concludes that, then, you know, that's what the court will conclude. And then it will be up to you. I don't think the court can compel an approved jurisdictional determination at that point. That would be far outside of the normal APA remedies. If Mr. Lewis requested one at that point, the court would have to examine it in light of the court's findings. That is what he is requesting. You've suggested that by withdrawing your determination, that also vacates his request. But, again, looking at the record, this is important to me, so let me get it right. In October of 2020, you may recall the government stated, what's left is the original request for an approved jurisdictional determination, which is not fulfilled. So as long as Mr. Lewis still wants to maintain and doesn't withdraw it, the Army Corps will respond by issuing a new one. So the status quo now is he's got one pending. So by you saying you've withdrawn it doesn't mean he's got to file another one. Well, I think the Corps has been trying to work with Mr. Lewis, and there were communications that suggested he didn't want the Corps to issue another one. And so the Corps said, fine, we won't. As a legal matter, yeah, if there's a pending request and he wants it, the Corps has said they'll expeditiously issue one. I don't think they're trying to hide the ball. They're trying to work with him. They're trying to make sure they get it right. We had a situation here where the law changed, where the regulation that underlied the approved jurisdictional determination was vacated and went away. There was a new Supreme Court decision. And the Corps said, we're going to withdraw this so we can do it again. And he said, no, we don't want you to do it again. We want the court to say that there's no jurisdiction at all here ever. And all we're saying is, really, we get it. It's been a long time. It's an arduous process. The Corps is not any happier about having to redo these things either. But they ought to get the chance to do it in the first instance because the facts can change on the ground. And, in fact, they can be revealed more with more investigation. And these things only last five years. And so we're already past five years from when the first one was issued. And so it would be time to go back and do another one anyway. So the point – well, but the first time this came around, which is six years ago, the district court found no – it didn't satisfy the broader rule for waters. And then it seemed to – I think you're conceding now. It doesn't satisfy the Sackett test presently. So why do you – I want to make sure that I'm not conceding the second part of that. Well, then you lose. Then you lose. Well, and I – Well, I'm sorry. I think we would lose either way if I do concede it. But I think that the point I want to make is that the district court, when it reviewed the first approved jurisdictional determination, did not say it can never satisfy the significant nexus test. Let me just ask a question, though. Let's say this were somewhere in Iowa and you're 50 miles from the nearest – or you're 15 miles from the newest deal. Do you say that the farm owner in Iowa who has to go downhill 15 miles to the nearest creek and when it rains some water flows down there post Sackett, does he have to go for an AJD in order to do something on his land? You never – well, nobody ever has to go – What is – Nobody ever has to go for an AJD at all. Well, except – They're optional and they're requested and provided as a service to find out whether the Corps thinks there's jurisdiction. Well, and then when the Corps in – you know, Louisiana's a little flatter than Iowa is, but then the Corps holds you up administratively for years and years and years under various iterations of presidential administrations and rule changes and so on. And so the landowners – where is the freedom of the landowner to use his land? Well, the – Because if he – Mr. Lewis can use his land. The approved jurisdiction of the farm determination doesn't – He would have – and look, during the last – suppose during the last 10 years Mr. Lewis had decided that he – they wanted to have a trailer park on this land. What would the Corps have said? They would have said you needed a permit, right? And that decision could have been challenged in court or it could have gone ahead and – Well, the poor man – Lord knows how many thousands he's expended on the fees. The Army Corps litigates for zero. The landowner litigates – you think that's funny and we do have trillions of dollars in debt, but there's always an opportunity cost, but that's money out of their retirement. I understand and I understand that this particular case happened at a time when there was a lot of upheaval in the status of waters of the U.S. where you had multiple court decisions, where you had multiple regulations going back and forth, and I get it that that's tough on landowners. And we're not here suggesting that they do anything other than go through the normal process. They don't have to get an approved jurisdictional determination. They're not required for any action. They can apply for a permit. They can just do it and risk enforcement. They don't have to – they don't have to go through this process, and the process is limited in nature. It only gives you an opinion for five years and it binds the Corps. Suppose we were to remand it to the Army Corps now, and let's say we didn't have the language in it because you don't particularly care for the language that Judge Higginson is suggesting. So suppose we took your option. We remand it back to the Corps again. Then he wants to build a trailer park. Then he has to go at his risk. Correct? Well, he can certainly ask for another jurisdictional determination, and the Corps would make that determination based on the standards that apply now. And if the Court is correct about what those standards mean, then the Corps will conclude there's no jurisdiction here. But it's the Corps' job. The trouble is that that just hasn't happened. He's won twice in district court. Why would the man have any confidence? I mean, he won under the significant nexus test with the district court finding there's no continuous surface. So the government, you're right. You can push and say give us the first shot, but with bad facts you're risking very bad law. It seems you get Sackett. This is a question and a criticism. Yesterday, effective immediately, or last week, effective immediately, the revision to the January final rule came out, right? I believe it's effective on publication in the Federal Register. I don't know whether it's actually been formally published, but it's imminent. A 28-J, anything to inform us, or post-Sackett case law could help instead of walking in today. We did put in our brief that that was going to be something. Okay, but I think it's significant for his exact case because culverts have changed themselves, and a lot of the arguable ground for wetlands turns on the culvert as I read it. Well, and I'm not sure that the deletion of culvert necessarily controls anything because you're going to look for a continuous surface connection. I don't think the new rule says that you can't have a continuous surface connection. Well, the old rule in January said it could be, and the new rule that came out last week crosses out culverts. The old rule explicitly said, yes, culverts do count, but this one doesn't say culverts don't count. But these are just the kinds of things that it doesn't make any sense for the Court of Appeals in this context to be trying to decide that based on a record compiled to demonstrate compliance with a different rule years ago under a different test. The Court of Engineers is the one that should decide in the first instance whether this culvert creates a significant enough connection, and then the Court can review it. But, I mean, that might have some rationality if the law had expanded in the meantime, but the law has contracted. Your client didn't satisfy the old rule, which was broader, and how can it possibly satisfy the narrower rule that requires a water connection, a surface connection to a RPW? The district court's holding for the old rule was that, not that you could never satisfy it with this property, but that the record then compiled didn't demonstrate it, which is how district courts are supposed to review the administrative record. You review the administrative record. You say it doesn't support it. You send it back. Maybe the court could come up with more support on remand. In fact, they did nine more site visits. They did coring where they saw that there's been four to nine inches of fill over the hydric soils that are there under the nine inches of fill. They saw that— Voluntary remand, you go back to the original request, his jurisdictional determination in 2017. Right, we would do another—yes, you would do another one. But that's been answered. The district court said you answered that. No continuous surface connection. On the facts as they were compiled in that record in 2017, but we're— And that's what he's entitled to. But that only lasts for five years. We're beyond that. The court can go back and do further investigation. I mean, even if he had won at that point, it would still be beyond the five-year, the life of these jurisdictional determinations. I mean, a lot of this is caused because we're still in a sort of a new era on review of these. I mean, Hawks is not that old, you know, working out exactly how you review and what happens when you review approved jurisdictions. Jones's point is powerful, which is that's understandable. Changes of law when it expands. But here it contracts and you've lost under the more expansive version before. It's 11 years. There's this exhaustion quality that can lead to language like the Supreme Court in Sackett. This is not a wetlands, period. I understand the frustration. But, again, you know, I think we would just rely on those previous determinations that we didn't meet that broader standard were based on the particular facts as articulated in that particular record. And this is a fact-intensive— You've got a minute left. Could you get to what was your mootness argument? Because I didn't understand that. You say you've mooted this whole issue, so— Well, this is review of a final agency action. This court has said in the spring branch that you don't issue declaratory judgments just, you know, based on when there's no approved jurisdictional determination. The court withdrew it. There's no agency action. He's already gotten all the relief you can normally get in an APA suit, which is you sue. Endless loop. The set-asides. It looks like the government's going to lose. They can withdraw the determination. He's got to apply for a new one? Do you have precedent for that? Well, I mean, you know, the cases we cited in the brief, the Grosshearth case out of the Ninth Circuit is one where the— and it's within the voluntary remand context, it's the same idea in the Pellissippi Parkway case where the agencies often say, well, you know, we got this wrong here. We applied a wrong standard. You're not saying we got it wrong. You're saying he needs to apply again. No, we're saying that the 2020 approved J.D. applied an incorrect standard because it applied the National Waters Protection Rule, and we're just saying, you know, since that applied an incorrect standard, we should go back and apply the correct standard, which is now settled, which is— I mean, countless cases we do this in, not just in this context, but in lots of contexts where we've, you know, there's an Eleventh Circuit case where we say, well, we messed this up. We need to go back and look at this. How many times does the government get to do that? I don't know the answer to that, preferably until they get it right. I mean, generally you try to get it right. I mean, at some point the courts are going to say you got it wrong, but under principles of normal administrative review, you don't then reach out and say— It's not normal administrative action to keep the individual citizen who is supposed to have some freedom of action up in the air about a matter as fundamental as the use of his own real property. That is not normal. What the Sacketts experienced was not normal, and you're asking for us to define deviancy down to the endless loop. I don't think that that's what we're— I understand the point, Judge Jones. I don't think that's what we're asking for. What we're asking for is just the normal administrative— normal judicial review of administrative action. And I understand the frustrations. It does take a long time in these cases. But remember, nothing about an approved jurisdictional determination restricts the property owner's rights in any way. It restricts the court's ability where it said there's not waters here to come into court later and say there are waters. But it doesn't restrict their rights to do anything. Well, we've already been over that. Thank you. All right. Your Honors, just briefly, largely what I heard was that under some possible future inspection of the property that the jurisdictional status of these waters that are extending from the property may change. However, when you look at the requirements, some of which have not changed since the Rapano's plurality, and one of which is that the wetlands must be indistinguishable from the jurisdictional waters. And in your tab six of your excerpts from the 2023 case, we provided pictures of this property, and these are grassy fields. They're like you could play soccer on. There is no surface water. There's none whatsoever. We've got a picture of a truck driving on the field, through the field. And, you know, this is not land where you can say that it is indistinguishable from water. Regardless of whether some nearby tributary they can, you know, reclassify as a relatively permanent water, you can't get by the fact that this is distinguishable from any possibly covered water under the CWA. And in that regard, it follows right along with the Sackett case. The Sacketts were 300 feet from a traditional navigable water. We're 10 to 15 miles. And our property is high and dry above the 500-year flood plain. It's land. It is not water. And regardless of what they claim the jurisdictional status of, you know, some tributary may be, if they examine it enough times, it's not going to change the fact that this land is not a water. Appreciate it. Thank you. Yes, sir. I think the time was a little off, but I see two minutes, so I better hurry. I'm glad I heard one judge say endless loop. That was a term we came up with in this case. And I was using escalarian stairwell or whatever, but I think you got it, Judge. We're facing an endless loop. The five-year of an AG date, the government said it's not permanent. Well, of course not. Once you get the AJD, you develop. You do something. You don't wait five years and think it will change again. Mr. Lewis could have done something by now. As far as the relief, we'll check the lower case in Sackett. But the court already has the Sackett ruling in the court and EPA's interpretation of it. It applies. They had the first dibs, and they took it. Now it's the court's dibs. Nothing wrong with that. I haven't heard any mention of mootness, but I don't think I can assume the court is going to drop that as an issue. If it is, let me know now, but you're not going to tell me. Well, on one issue of mootness, the voluntary action, whether it was a motion for voluntary remand or voluntary withdrawal of the AJD, it was voluntary. And the government argues their burden is not too light to show it's not going to be repeated unless there's game-manships in the rules. And one thing everybody has missed, including four of the justices on the Supreme Court in Sackett, is that the January 2023 rule, which has been amended in part by the August 2023 amendment, says, and I kid you not, it says, and this is the elephant in the mouse hole that's hiding, it says a continuous surface connection between a wetland and a relatively permanent water does not mean it has to be continuously having water. It could be a dry ditch. It's connected, because it says continuous surface connection. The courts, even poor Justice Scalia didn't put the word water in there, but in context, that's what he meant. I thought in last week's revision they did redline out intermittent and ephemeral. Oh, they did all that in a few bullets, but on 88 Federal Register, and my time's up, page 3095 of the January 2023 rule, their interpretation, the Court and EPA's interpretation is that a constant surface connection does not mean a constant hydrologic connection. It can be connection by a dry burn. It can be a connection by a non-jurisdictional dry ditch. Now, that's wrong. That's contrary to Sackett, I'm sure. Contrary to Justice Scalia, I'm sure. But the point is that's gamemanship. You mean you're saying that's the August 23rd? August. No, actually, it's in the January 23 rule, but the August didn't take that out. August, you say, and is that in the Federal Register? That's in the Federal Register, 88 Federal Register, page 3095. You can read it and say, what does that mean? That gives the court selective enforcement capabilities to pick and choose who they want to harass. Excuse me, regulate. And I guess that's all I have time to say, other than the regularly permanent waterway rule has been in existence since Rapanos, and there's nothing new to investigate. Thank you, Your Honors. All right. The court will be in recess.